IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| STEADFAST INSURANCE COMPANY a/s/o SKANSKA USA BUILDING, INC. f/k/a BEERS CONSTRUCTION, | ) ) ) ) | Case No. 4:07CV00058 |
| Plaintiff, | ) ) | **MEMORANDUM OPINION** |
| v. | ) ) ) | By: Jackson L. Kiser |
| BRODIE CONTRACTORS, INC., | ) ) | Senior United States District Judge |
| Defendants. | ) ) | |

Before me is the Defendant's Motion for Summary Judgment [29] and the Defendant's Motion to Strike Plaintiff's Expert Disclosures and to Exclude Plaintiff's Experts [41]. In this case, Plaintiff alleges breach of contract and breach of warranty against Defendant, a masonry subcontractor, concerning replacement of brick veneer on the Danville Regional Medical Center. The project dates from 2003.

The Defendant raised three arguments in support of summary judgment. For the reasons herein, I will **GRANT** the Defendant's Motion for Summary Judgment under Virginia's contract statute of limitations and the Commonwealth's interpretation of flow down contracts. Therefore, I consider the Defendant's second motion to be moot.

In this case, substantive Virginia law is controlling. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). In Virginia, a breach of written contract claim must be filed within five (5) years after the cause of action has accrued. Va. Code Ann. § 8.01-246. Virginia courts recognize the flow down relationship between prime contracts to the subcontracts in the construction industry and see the economy in contractual consistency – particularly the flow down of obligations and

1

benefits from prime contracts to subcontracts so subcontractors are fairly treated. See C. & P. Tel. v. Sisson and Ryan. Inc., 234 Va. 492, 494-95, 362 S,E.2d 723 (1998); see also Omni Alarm Systems, Inc. v. MCI Electric Co., Inc., 58 Va. Cir. 264 (Warren County Cir. Ct., 2002).

This case deals with language contained in the original construction contract (the Prime Contract) between the owner, Danville Regional Medical Center (DRMC), and general contractor, Skanska USA Building Inc. (Skanska). The subsequent subcontract to provide masonry work (the Subcontract) between Skanska and Brodie Contractors, Inc. (Brodie) is also relevant. Specifically, the flow down provision in the Prime Contract, between DRMC and Skanska, required all of Skanska's subcontracts with subcontractors to include a flow down provision. § 5.3.1 of the Prime Contract states, in part:

> By appropriate agreement, ..., the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, ... which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and **shall allow to the Subcontractor, unless specifically provided otherwise <u>in the subcontract agreement</u>, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner.** (emphasis added)

The Subcontract, between Skanska and Brodie, explicitly includes the Prime Contract. The Subcontract's flow down provision (Article 2 (a)) states as follows:

> The Contract Documents for this Subcontract consist of this Agreement and any exhibits or attachments hereto, **the Agreement between the Owner and Contractor for the above-referenced Project, all Conditions to the Agreement between the Owner and Contractor (General, Supplementary and any other Conditions)**, all Drawings, Specifications, and Contract Documents referenced in that Agreement, along with all Addenda and modifications to that Agreement. (emphasis added)

It is clear that all contracting parties intended for the general conditions of the Prime Contract to be integrated with the Subcontract.

The relevant contractual language providing terms to determine when the statute of limitations will accrue is found in § 13.7.1.1 of the Prime Contract, under the title "COMMENCEMENT OF STATUTORY LIMITATION PERIOD," which states:

> **Before Substantial Completion.** As to acts or failures to act occurring prior to the relevant date of substantial completion, any applicable statute of limitations shall commence to run any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of substantial completion.

The Subcontract does not have a statute of limitations provisions, therefore, the Prime Contract's accrual provision, cited above, governs the parties to the Subcontract, Brodie and Skanska, under the flow down provisions (§5.3.1 of the Prime Contract and Article 2(a) of the Subcontract). This is a fundamental principle of construction contract law. In addition, the qualifying sentence in § 13.7.1 of the Prime Contract, "between the owner and contractor," is not controlling in light of the subsequent Subcontract's flow down provision, Article 2(a), "allow[ing] to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner."

The uncontroverted date of the project's substantial completion was August 19, 2002. However, there is evidence that Skanska and DRMC first expressed their objections to the masonry work as early as October 10, 2001. In fact, an independent expert masonry report was completed by the firm of Sutton-Kennerly on June 6, 2002.

The instant lawsuit commenced on December 20, 2007. The Plaintiff contends the accrual date was May 23, 2003, when DRMC sent Brodie a formal rejection letter. This letter is not unlike previous letters sent by Skanska and DRMC informing Brodie of their problems with the masonry work and expressing the view that Brodie was in breach (specifically letters sent to Brodie from Skanska dated November 20, 2001 and December 14, 2001). Under Virginia

3

contract law and § 13.7.1 of the Prime Contract, a rejection letter does not establish when the statute of limitations accrues. Claiming the statute of limitations began to run on the date DRMC sent a letter rejecting the work, May 23, 2003, is untenable in logic and law. The date of the letter has no legal significance and has no bearing on when the statute of limitations accrued.

Under § 13.7.1.1 of the Prime Contract, applicable to the Subcontract through the flow down provisions, the accrual date is determined by "acts or failures to act occurring prior to the relevant date of substantial completion." It is uncontested that the date of substantial completion was August 19, 2002, and I find this to be the date the statute of limitations accrued. Therefore, the latest the Plaintiff could bring this action would be August 19, 2007, but the complaint was filed on December 20, 2007, four months past the five year statute of limitations time period.

As a consequence, Brodie's Motion for Summary Judgment will be **GRANTED**, and an appropriate judgment order entered.

The Clerk of the Court hereby is directed to send a copy of this Memorandum Opinion to all counsel of record.

Enter this 31st day of October, 2008.

                                                           s/Jackson L. Kiser
                                                           Senior United States District Judge